IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-50334
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT CHARLES HOPES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

March 25, 2002

Before POLITZ, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

POLITZ, Circuit Judge:

Robert Charles Hopes appeals his guilty plea conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and the denial of his interim motion to suppress evidence seized in search of his person. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## BACKGROUND

Police officers Scott Ogle and Robert Jones responded to a 9-1-1 call from Ruth Robinson, the operator of two halfway houses in Austin, Texas. Robinson, with whom the officers were familiar, complained that Rickie Monroe, a nonresident of Robinson's halfway houses, was causing problems at her Angelina Street facility. Robinson also told the officers that she had secondhand information about another individual, whom she described as a man wearing a white shirt and burgundy shorts who might have a gun. She also stated that this individual had an altercation with Monroe.

The officers and Robinson went to the Angelina Street halfway house to remove Monroe from the property. Upon entering the house, Officer Ogle observed a man sitting in the living room, later identified as Hopes, wearing a white shirt and bright red shorts. The officers did not approach Hopes at that time but sought out Monroe, whom they located in a back bedroom. After the officers determined there were no outstanding warrants for Monroe, Robinson gave him a criminal trespass warning and he left the premises without further ado.

Immediately thereafter, the officers and Robinson entered the living room where Hopes was seated on the sofa. Robinson pointed to Hopes and stated that he had a gun. Officer Ogle approached Hopes, told him he would be frisked, and then placed his hand on Hopes' shoulders. Hopes arose quickly from the sofa, in a manner which

2

disturbed Officer Ogle. Concerned that Hopes might attempt to run, pull a gun, or get physical, the officers forced him onto the sofa and handcuffed him. Officer Ogle then frisked Hopes, found a loaded gun in his crotch area, and seized it. The officers then placed Hopes under arrest.

Hopes was indicted on one count of being a convicted felon in possession of a firearm. He moved to suppress the firearm, contending that it was the product of an illegal search. He sought suppression of the evidence, claiming that Robinson's secondhand information constituted an anonymous tip that did not provide reasonable suspicion for Officer Ogle's actions. After a hearing the district court denied the motion. The court concluded that this case did not fall under the anonymous tip doctrine of <u>Florida v. J.L.</u>,[1] and the totality of the circumstances herein adequately established reasonable suspicion to justify a frisk. Hopes entered a conditional plea of guilty and was sentenced to 115 months' imprisonment. This appeal timely followed.

## ANALYSIS

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its ultimate conclusions as to the constitutionality of

---

[1] 529 U.S. 266 (2000) (holding that an anonymous tip that a person is carrying a gun is, without more, not sufficient to justify a police officer's stop and frisk of that person).

3

any law enforcement action *de novo*.[2] We view the evidence in the light most favorable to the party prevailing in the district court, in this case, the prosecution.[3]

It is well established that a police officer who can point to specific and articulable facts, together with rational inferences therefrom, that lead him reasonably to believe that criminal activity may be afoot and that the person with whom he is dealing may be armed and presently dangerous, is generally entitled to conduct a limited search of the person for weapons.[4] Hopes, relying on <u>Florida v. J.L.</u>, asserts that the officers lacked reasonable suspicion to stop and frisk him because the tip the officers received allegedly was anonymous. We are not persuaded.

<u>Florida v. J.L.</u> is distinguishable. Therein, the police dispatcher relayed an anonymous 9-1-1 tip to the arresting officer. This relay of information did not make the dispatcher the tipster.[5] In the instant case the tip was not anonymous but, rather, was given by Robinson, an individual who had operated the halfway house for many years and was well known to the officers who had dealt reliably with her many times. Unlike the unknown, unaccountable tipster in <u>Florida v. J.L.</u>, Robinson personally

---

[2]  <u>United States v. Kelley</u>, 140 F.3d 596, 601 (5th Cir. 1998).

[3]  <u>United States v. Castro</u>, 166 F.3d 728, 731 (5th Cir. 1999).

[4]  <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

[5]  See <u>Florida v. J.L.</u>, 529 U.S. at 268, 271.

4

summoned and met the police officers face to face, and could be held accountable if the tip proved to be fabricated. Florida v. J.L. is of little precedential value to the resolution of this appeal.

We review the totality of the circumstances in determining whether a sufficient basis for a Terry stop existed.[6] Herein the incidents occurred at a halfway house–a facility where convicted criminals on probation or recently released from imprisonment generally reside. This particular facility, the Angelina Street halfway house, was located near what was identified as one of the most crime-ridden areas of the city. The officers were on the premises at the request of Robinson, the operator of the facility, in an official capacity, assisting with the removal of a trespasser with whom Hopes had a prior difficulty. Additionally, immediately upon seeing Hopes, Robinson pointed him out to police as the man with the gun. In addition, Officer Ogle testified that when the officers approached Hopes he rose from the sofa in a manner which alarmed the officers. Given the totality of the circumstances, we conclude that the officers had sufficient probable suspicion to justify a Terry stop of Hopes and a frisk for weapons.

For these reasons, the district court's denial of Hopes' motion to suppress and his guilty plea conviction are AFFIRMED.

---

[6] Alabama v. White, 496 U.S. 325 (1990).